IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
NORTHERN DIVISION

JAMES C. CHENAULT                                                                         PLAINTIFF
#00341511

v.                                          3:24CV00072-DPM-JTK

SAM WILLIAMS, et al.                                                                    DEFENDANTS

## PROPOSED FINDINGS AND RECOMMENDATIONS

### INSTRUCTIONS

The following recommended disposition ("Recommendation") has been sent to United States District Judge D.P. Marshall Jr. Any party may file written objections to all or part of this Recommendation. If you do so, those objections must: (1) specifically explain the factual and/or legal basis for your objections; and (2) be received by the Clerk of this Court within fourteen (14) days of this Recommendation. By not objecting, you may waive the right to appeal questions of fact.

### DISPOSITION

**I.    Introduction**

James C. Chenault ("Plaintiff") is incarcerated at the Leavenworth U.S. Penitentiary in Leavenworth, Kansas. Plaintiff sued Greene County, Arkansas, Deputies Sam Williams and Jessica Pitcher (collectively "Defendants") under 42 U.S.C. § 1983. (Doc. No. 2). Plaintiff alleges dangerous conditions during his transport that resulted in injuries to his head, neck, and shoulders along with deliberate indifference to his serious medical needs. (Id. at 4-6). Plaintiff seeks damages. (Id. at 7).

Defendants filed a Motion for Summary Judgment, Brief in Support, and Statement of Facts on the merits of Plaintiff's claims. (Doc. Nos. 49-51). Plaintiff has responded. (Doc. No. 53). Defendants have not filed a reply and the time for doing so has passed.

After careful consideration and for the reasons set out below, the Court recommends Defendants' Motion be granted.

## II.     Plaintiff's Complaint

Plaintiff sued Defendants in their personal and official capacities. (Doc. No. 2 at 1-2). According to Plaintiff, on April 2, 2024, Defendant Williams shackled and handcuffed Plaintiff and another individual. (Id. at 4). Defendants then escorted Plaintiff to a transport van and seated them in the third-row seat, but did not buckle Plaintiff's seatbelt; Plaintiff could not reach the seatbelt on his own because of his restraints. (Id. at 4, 5). Defendant Williams began driving the van to take Plaintiff to "the U.S. Marshal's building."[1] (Id. at 4, 5).

At approximately 8:08 a.m., Plaintiff "noticed the car moving entirely too fast." (Id. at 4). Defendant Williams slammed on the brakes to avoid hitting the car in front of him. (Id.). As a result, Plaintiff was thrown from his seat and his head hit the officer's cage. (Doc. No. 2 at 4). Defendant Pitcher witnessed Plaintiff being thrown from his seat and asked if Plaintiff was ok. (Id. at 5). Plaintiff responded that his neck and head were hurting badly. (Id.). Defendant Pitcher retorted that Plaintiff should have been wearing his seatbelt. (Id.). Defendants did not offer Plaintiff medical help and did not report the incident when they arrived back at the Greene County Detention Center. (Id.).

---

[1] Plaintiff was being transported from Paragould to the Richard Sheppard Arnold United States Courthouse in Little Rock, Arkansas. (Doc. No. 51-6 at 20:05-20:08, 22:03-22:07, 25:14-25:18).

At the Detention Center, Plaintiff asked for medical help, but was taken to his cell. (Id.). After he filed a grievance, the jailer took Plaintiff to medical where he was examined and given ibuprofen. (Doc. No. 2 at 5). The Sheriff and Jail Administrator spoke with Plaintiff when he was back in his cell, after which he was escorted against to the infirmary where pictures were taken of his injuries. (Id. at 6). Plaintiff maintains "they" told him the occurrence was not his fault because policy requires that detainees be "buckled down in a seatbelt by the transporting officers." (Id.). Plaintiff says he still has a knot on his head and that he can barely move his neck because of the pain. (Id.). Plaintiff seeks damages. (Id. at 7).

### III.   Summary Judgment Standard

Pursuant to Fed. R. Civ. P. 56(a), summary judgment is appropriate if the record shows that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. See Dulany v. Carnahan, 132 F.3d 1234, 1237 (8th Cir. 1997). "The moving party bears the initial burden of identifying 'those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.'" Webb v. Lawrence County, 144 F.3d 1131, 1134 (8th Cir. 1998) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (other citations omitted)). "Once the moving party has met this burden, the non-moving party cannot simply rest on mere denials or allegations in the pleadings; rather, the non-movant 'must set forth specific facts showing that there is a genuine issue for trial.'" Id. at 1135. Although the facts are viewed in a light most favorable to the non-moving party, "in order to defeat a motion for summary judgment, the non-movant cannot simply create a factual dispute; rather, there must be a genuine dispute over those facts that could actually affect the outcome of the lawsuit." Id.

In addition, "[a]ll material facts set forth in the statement (of undisputed material facts) filed by the moving party...shall be deemed admitted unless controverted by the statement filed by

3

the non-moving party . . . ." Local Rule 56.1, Rules of the United States District Court for the Eastern and Western Districts of Arkansas. Failure to properly support or address the moving party's assertion of fact can result in the fact considered as undisputed for purposes of the motion. Fed. R. Civ. P. 56(e).

**IV.   Facts and Analysis**

Plaintiff sued Defendants in their personal and official capacities.

**A.   Official Capacity Claims**

Plaintiff sued Defendants in their personal and official capacities. "A suit against a government officer in his official capacity is functionally equivalent to a suit against the employing governmental entity." Veatch v. Bartels Lutheran Home, 627 F.3d 1254, 1257 (8th Cir. 2010). Accordingly, Plaintiff's official capacity claims against Defendants are the equivalent of claims against Greene County.

To establish municipal liability, a plaintiff must prove that an official municipal policy, deliberately indifferent failure to train or supervise, or unofficial custom caused the constitutional injury. Corwin v. City of Independence, Missouri, 829 F.3d 695, 699 (8th Cir. 2016) (citing Monnell v. Dep't of Soc. Servs., 436 U.S. 658, 691 (1978); City of Canton, Ohio v. Harris, 489 U.S. 378, 389 (1989)). Plaintiff has not alleged that a policy or custom was the driving force behind the alleged violation of his rights. Rather, as to Plaintiff's conditions of confinement claims, he alleges that his injuries were caused by Defendants failing to follow the policy "that all transporting detainees are to be cuffed/shackled and buckled down in a seat belt by the transporting officers." (Doc. No. 2 at 6). And Plaintiff has not asserted that his medical claims were the result of a Greene County policy or custom. As such, Plaintiff cannot establish liability against Greene County.

B.     **Personal Capacity Claims**

As mentioned above, Plaintiff brought suit under 42 U.S.C. § 1983. "Liability under § 1983 requires a causal link to, and direct responsibility for, the alleged deprivation of rights." Madewell v. Roberts, 909 F.2d 1203, 1208 (8th Cir. 1990). "Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." Parrish v. Ball, 594 F.3d 993, 1001 (8th Cir. 2010) (citing Ashcroft v. Iqbal, 556 U.S. 662, 676 (2009)). Bare allegations void of factual enhancement are insufficient to state a claim for relief under § 1983. See Iqbal, 556 U.S. at 678.

1.     **Qualified Immunity**

Defendants ask the Court to dismiss Plaintiff's claims against them in their individual capacities based on qualified immunity. (Doc. No. 50 at 5-7). Qualified immunity shields a government official from liability when his conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Qualified immunity is a question of law, not a question of fact. McClendon v. Story County Sheriff's Office, 403 F.3d 510, 515 (8th Cir. 2005). Thus, issues concerning qualified immunity are appropriately resolved on summary judgment. See Mitchell v. Forsyth, 472 U.S. 511, 526 (1985) (the privilege is "an *immunity from suit* rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial.").

To determine whether defendants are entitled to qualified immunity, courts generally consider two questions: (1) whether the facts alleged or shown, construed in the light most favorable to the plaintiff, establish a violation of a constitutional or statutory right; and (2) whether that right was so clearly established that a reasonable official would have known that his or her

actions were unlawful. Pearson v. Callahan, 555 U.S. 223, 232 (2009).[2] "'A clearly established right is one that is sufficiently clear that every reasonable official would have understood that what he is doing violates that right.'" Thurmond v. Andrews, 972 F.3d 1007, 1012 (8th Cir. 2020) (internal citation omitted). In considering whether a right is clearly established, courts do not look at precedent "at a high level of generality." Id. Instead, courts "look for a controlling case or a robust consensus of cases of persuasive authority. There need not be a prior case directly on point, but 'existing precedent must have placed the statutory or constitutional question beyond debate.'" Id. (internal citation omitted). A defendant is entitled to qualified immunity only if no reasonable fact finder could answer both questions—whether the facts alleged or shown, construed in the light most favorable to the plaintiff, establish a violation of a constitutional or statutory right and whether that right was so clearly established that a reasonable official would have known that his or her actions were unlawful—in the affirmative. Nelson v. Correctional Medical Services, 583 F.3d 522, 528 (8th Cir. 2009).

### 2. Plaintiff's Unlawful Conditions Claim

Plaintiff indicated that at the time of the incident giving rise to this lawsuit, he was in jail and still awaiting trial on pending criminal charges. (Doc. No. 2 at 3.) A pretrial detainee's conditions of confinement claim is governed by the standard set out by the United States Supreme Court in Bell v. Wolfish. 441 U.S. 520 (1979); Stearns v. Inmate Services Corp., 957 F.3d 902, 907 (8th Cir. 2020). As announced in Bell, pretrial detainees are protected under the Due Process Clause of the Fourteenth Amendment from conditions of confinement that amount to punishment.

---

[2]Courts are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." Nelson, 583 F.3d at 528 (quoting Pearson v. Callahan, 555 U.S. at 236).

441 U.S. at 535. Conditions amount to punishment under Bell if the conditions are intentionally punitive, were not reasonably related to a legitimate governmental purpose, or were excessive in relation to that purpose. Stearns, 957 F.3d at 907. Mere negligence is insufficient to support a claim under Bell. Id. at 908 n.5.

In support of their Motion for Summary Judgment, Defendants provided a transcript of Plaintiff's deposition. (Doc. No. 51-6). Plaintiff says there were seatbelts available in the transport van, but he did not ask Defendant Williams to buckle his seatbelt. (Id. at 30:19 – 31:02). Plaintiff was asleep just before the incident happened but woke up when he heard the brakes squealing. (Id. at 33:12-34:15). Plaintiff had asked Defendant Williams to slow down earlier; Plaintiff believed Defendant Williams was driving too fast and had to slam on the brakes to avoid hitting the car in front of him after coming around a blind curve. (Id. at 33:16-35:12; 39:09-39:22). There are no records reflecting how fast Defendant Williams was driving when he applied the brakes.

Plaintiff alleges both Defendants escorted him to the transport van. Nothing in Plaintiff's deposition or Complaint reflects that Defendants left his seatbelt unbuckled as a punitive measure. Nothing in the record suggests Defendant Williams had any prior knowledge of the slowed traffic ahead of him. And it is undisputed the Defendant Williams applied the brakes suddenly to avoid an accident—there was nothing punitive about why Defendant Williams stepped on the brakes.

In Stark v. Lee County, IA, 993 F.3d 622 (2021) the United States Court of Appeals for the Eighth Circuit considered whether a deputy sheriff violated an inmate's rights under the Eighth Amendment. The inmate, who was handcuffed, shackled, and restrained by a belly chain, was in the backseat of the deputy's patrol car without his seatbelt fastened. During transport to the inmate's medical appointment, the deputy heard the dispatcher advise that a robbery was in progress at a nearby bank. The deputy drove to the bank and saw the suspect fleeing on foot through a vacant lot. The deputy pursued the suspect through the vacant lot that was full of ruts

and depressions, which caused the inmate to be tossed around in the backseat. The inmate immediately began to experience lower back and neck pain as a result of the rough ride and ultimately brought suit under 42 U.S.C. § 1983. The Court of Appeals for the Eighth Circuit found that the deputy was entitled to qualified immunity and reversed the lower court's order denying summary judgment in the deputy's favor.

The Court of Appeals for the Eighth Circuit relied on Spencer v. Knapheide Truck Equip. Co., 183 F.3d 902 (8th Cir. 1999), among other cases, in reaching its decision. (Id. at 626). In Spencer, a pretrial detainee was being transported in the prisoner compartment of a patrol wagon. Spencer, 183 F.3d at 904. The were no seatbelts in the wagon. The detainee claimed that he was tossed about as a result of stops and turns during transport. The detainee at one point was thrown forward "into the bulkhead of the compartment" causing injuries that rendered him a quadriplegic. Id. Regardless, the Court of Appeals for the Eighth Circuit found that the facts of the case did not rise to the level of a constitutional violation. Id. at 907.

It is undisputed that Plaintiff was not restrained in a seatbelt during his transport. But nothing in Plaintiff's Complaint or in his response to Defendants' Motion for Summary Judgment indicates that his transport without a seatbelt was punitive. Stearns, 957 F.3d at 907. Rather, Plaintiff's allegations more closely resemble a negligence claim. Considering Plaintiff's Complaint and Response to Defendants' Motion together with Stark and Spencer, the Court finds that Defendants are entitled to qualified immunity on Plaintiff's conditions of confinement claims. The Court notes that Plaintiff has not come forward with precedent establishing qualified immunity as to this claim would not be appropriate.

### 3. Plaintiff's Deliberate Indifference to Serious Medical Needs Claims

Beyond Defendant Williams not fastening Plaintiff's seatbelt, Plaintiff maintains Defendant Williams violated Plaintiff's constitutional rights by not offering him medical care.

(Doc. No. 51-6 at 38:01-39:08).  Plaintiff maintains Defendant Pitcher violated his rights by laughing at him after the incident and not offering medical help.  (Id. at 40:06-42:02).

Prison officials violate a pretrial detainee's rights under the Due Process Clause of the Fourteenth Amendment when they show deliberate indifference to his serious medical needs.  Ivey v. Audrain County, Missouri, 968 F.3d 845, 848 (8th Cir. 2020).  To succeed on a claim of deliberate indifference to a medical need, a plaintiff must show he had an objectively serious medical need and prison officials had actual knowledge of, but deliberately disregarded, that need.  Id.  A serious medical need is one diagnosed by a physician or "so obvious that even a layman would recognize [it]."  Leonard v. St. Charles Cnty. Police Dep't, 59 F.4th 355, 360 (8th Cir. 2023).  "Deliberate indifference may be demonstrated by prison guards who intentionally deny or delay access to medical care or intentionally interfere with prescribed treatment, or by prison doctors who fail to respond to prisoner's serious medical needs."  Dulany v. Carnahan, 132 F.3d 1234, 1239 (8th Cir. 1997).  The disregard of the serious medical need "must rise to the level of criminal recklessness."  Leonard, 59 F.4th at 360.  "Mere negligence is not sufficient to support a cause of action under § 1983."  Davis v. Hall, 992 F.2d 151, 153 (8th Cir. 1993).

In his Complaint, Plaintiff says that immediately after the incident his head and neck "were hurting real bad" and that there was a huge knot on his head.  (Doc. No. 2 at 5).  In his deposition, Plaintiff says he had a bruise on his head immediately after the incident but that he did not know that his neck was injured until the following morning.  (Doc. No. 51-6 at 20-22-21:15, 22:12-23:05).  Plaintiff acknowledged that his head was not cut or bleeding as a result of the incident. (Id. at 35:13-36:02).

The incident happened three to five minutes before Plaintiff arrived at the federal courthouse.  (Id. at 20:05-20:08).  Upon reaching the courthouse, Plaintiff was in the custody of the federal Marshals.  (Id. at 25:19-26:03).  Upon returning to the Detention Center, Defendants

"finally [got] off their shift" and left without reporting the incident. (Id. at 41:14-42:02). Plaintiff received medical care at the Detention Center after he filed a grievance and sought medical help. There are only limited medical records for the court's review. An x-ray of Plaintiff's spine revealed "no prevertebral soft tissue swelling." (Doc. No. 51-4 at 1). No bruising or swelling was observed during Plaintiff's examination. (Id. at 2). In his Complaint Plaintiff asserts he still has a knot on his head. In his deposition, Plaintiff says photos were taken of the knot on his head, but Plaintiff has not submitted those photos to the court.

Plaintiff has not alleged that Defendants were medically trained. Rather, Defendants were laymen—transport officers. After the incident, Plaintiff's head was not bleeding. Accepting as true Plaintiff's allegation that he had a bump on his head, that together with his subjective complaints was not enough to put Defendants on notice that Plaintiff had a serious medical need. And the medical records provided to the court likewise do not indicate that Plaintiff suffered from a serious medical condition as a result of the incident. There was no bruising or swelling observed, and the x-ray showed no soft tissue swelling. The Court notes that the medical records provided are dated days after the incident. But Plaintiff provided no earlier/other medical evidence establishing anything more serious.

Where, as here, Defendants moved for summary judgment, Plaintiff "was required 'to discard the shielding cloak of formal allegations and meet proof with proof by showing a genuine issue as to a material fact.'" Fatemi v. White, 775 F.3d 1022, 1046 (8th Cir. 2015) (internal citation omitted). Plaintiff has not, however, met proof with proof to establish facts in dispute that would preclude partial summary judgment in Defendants' favor on his deliberate indifference to serious medical needs claim. Wilson v. Miller, 821 F.3d 963, 970 (8th Cir. 2016) (allegations must be substantiated with sufficient probative evidence); Bolderson v. City of Wentzville, Missouri, 840 F.3d 982, 986-87 (8th Cir. 2016) (noting plaintiff's duty to meet proof with proof in affirming

summary judgment in defendant's favor). Accordingly, Defendants' Motion should be granted on this claim, as well.

## V.     Conclusion

IT IS, THEREFORE, RECOMMENDED that:

1. Defendants' Motion for Summary Judgment (Doc. No. 49) be GRANTED;

2. Plaintiff's claims (Doc. No. 2) be DISMISSED with prejudice.

3. The Court certify, pursuant to 28 U.S.C. § 1915(a)(3), that an in forma pauperis appeal from any Order adopting these recommendations and accompanying Judgment would not be taken in good faith.

Dated this 29th day of May, 2025.

_____
JEROME T. KEARNEY
UNITED STATES MAGISTRATE JUDGE